1
2
3
4
5
6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *
                                         )
9   FRAN SIMONTACCHI,                     )
                                          )
10              Plaintiff,                 )          3:07-CV-00407-LRH-VPC
                                          )
11   v.                                    )
                                          )          ORDER
12   STATE OF NEVADA ex rel. its           )
     DEPARTMENT OF PUBLIC SAFETY, et al., )
13                                         )
                 Defendant.                )
14   _____  )

15          Presently before the court is Defendants State of Nevada ex rel. Nevada Department of

16   Public Safety, et al.'s (collectively "Defendants") Motion for Summary Judgment (#24[1]).  Plaintiff

17   Fran Simontacchi has filed an opposition (#29) to which Defendants replied (#30).

18   I.     Facts and Procedural History

19          This is an employment discrimination dispute brought pursuant to 42 U.S.C. § 1983.  Since

20   September 19, 1990, Plaintiff has been an officer of the State of Nevada's Parole and Probation

21   Division ("Division"), which sits within the Department of Public Safety.

22          On July 6, 2004, Plaintiff injured her ankle at the Dallas airport during an extradition

23   assignment.  (Defs.' Mot. Summ. J. (#24), Ex. 1 at 5.)  Based on this injury, Plaintiff filed a

24   worker's compensation claim, which the State accepted.  (Id., Exs. 5, 1 at 7-8.)  On June 7, 2005,

25

26   _____
            [1] Refers to the court's docket number.

1    Plaintiff underwent surgery on her ankle.  (*Id.*, Ex. 1 at 6.)  Following the surgery, Plaintiff's doctor

2    indicated she should remain off work for two to three weeks following the surgery.  (*Id.*, Exs. 1 at

3    20-22, 3, 4.)  Plaintiff returned to work on July 7, 2005, working four hours per day.  (*Id.*, Ex. 6 at

4    1.)

5            On July 6, 2005, as a result of the ankle surgery, Plaintiff applied for catastrophic leave.

6    (*Id.*)  The Department of Public Safety denied Plaintiff's request because the request did not meet

7    the minimum requirements of catastrophic leave as set forth in Nevada Revised Statutes section

8    284.362.  Section 284.362 requires Plaintiff's medical condition to be life threatening or require an

9    extended convalescence of more than ten weeks.  (*Id.*, Ex. 6 at 3.)  On Plaintiff's application for

10   catastrophic leave, Plaintiff's doctor indicated that Plaintiff's injury was not "life threatening" and

11   would not require a convalescence of more than ten consecutive weeks.  (*Id.*)

12           Plaintiff appealed the decision.  (*Id.*, Ex. 6 at 5.)  In her appeal, Plaintiff stated her physician

13   inadvertently wrote on her catastrophic leave application that she would not require a

14   convalescence of more than ten weeks.  (*Id.*)  Accordingly, she submitted an amended application

15   form, indicating that her injury would require an extended convalescence of more than ten

16   consecutive weeks.  (*Id.*)

17           The State denied Plaintiff's appeal on the ground that Plaintiff's injury did not qualify as

18   "catastrophic."   The State reasoned Plaintiff's injury did not require a lengthy convalescence of

19   more than ten consecutive weeks because Plaintiff had returned to work on July 7, 2005, and had

20   been working on a part time basis of four hours per day.  (*Id.* at 4-5.)

21           On July 6, 2005, Plaintiff also applied for "4800 time."  (*Id.*, Ex. 1 at 12.).  This term refers

22   to payment provided to police officers and firefighters for time off for catastrophic injuries.  The

23   term evidently originated in California and refers to section 4800 of the California Labor Code.

24   Defendant Rigdon, a lieutenant in the Parole and Probation Division, informed Plaintiff that her

25   request had been denied because the Division no longer offered the 4800 option.  (*Id.*, Ex. 8 at 1).

26

On July 22, 2005, Plaintiff filed a grievance form objecting to the denial of her 4800 time. On July 25, 2005, the Department denied Plaintiff's grievance, stating that pursuant to Nevada Revised Statutes section 281.153 and Department of Public Safety Policy 4.1.011, the Parole and Probation Division had chosen not to offer 4800 time.  (*Id*. at 3.)  Section 281.153 provides, "The employer of a police officer . . . *may* establish a program that allows a police officer . . . whom it employees who has suffered a catastrophe resulting in temporary total disability, to elect to continue to receive his normal salary for a period of not more than 1 year in lieu of receiving compensation for the industrial injury . . . ."  Nev. Rev. Stat. § 281.153 (emphasis added). Department of Public Safety Policy 4.1.011 provides, in accordance with section 281.153, "Subject to budget considerations, Division Chiefs *may* establish a '4800 Time' program."  (emphasis added).  Pursuant to this authority, the Division of Parole and Probation had chosen not to offer its employees 4800 time.

Nonetheless, on August 1, 2005, Defendant Wright, Chief of the Parole and Probation Division, granted Plaintiff 4800 time, agreeing to "reimburse [Plaintiff] for all Annual, Sick, Compensatory or Leave Without Pay time related to the Temporary Total Disability [Plaintiff] experienced beginning on June 7, 2005 . . . ."  (*Id*., Ex. 8 at 4.)  Although Plaintiff agreed that the Department should grant 4800 time for her absence from June 7, 2005, to July 7, 2005, Plaintiff argued the Department should grant additional 4800 time for the part-time days she worked beginning on July 7, 2005.  (*Id*. at 5.)

Defendant Togliotti, Director of the Department of Public Safety, denied Plaintiff's request for additional 4800 time.  (*Id*. at 8.).  He reasoned section 281.153 only provided for 4800 time where an employee suffered a "temporary total disability."  Nevada Revised Statutes section 616A.340 defines a total disability as "incapacity arising out of and in the course of employment which prevents the covered workman from engaging . . . in any occupation for which he is or becomes reasonably fitted by education, training or experience."  Nev. Rev. Stat. § 6161A.340.

1   Defendant Togliotti concluded Plaintiff was ineligible for additional 4800 time because she was

2   able to return to work.  (*Id*., Ex. 8 at 8.)

3        Plaintiff appealed the decision.  (*Id*., Ex. 18 at 1.)  At the hearing, Plaintiff alleged she was

4   being discriminated against, as other officers, notably in the Highway Patrol, had been granted

5   4800 time.  (*Id*.)  On March 7, 2006, the Department of Personnel Employee-Management

6   Committee dismissed Plaintiff's grievance, but noted that the Department needed to "clean up the

7   various and potentially conflicting policies regarding 4800 time . . . ."  (*Id.* at 2.)  On September 27,

8   1998, the Department had adopted a policy to grant eligible employees 4800 time.  (*Id*., Ex. 11 at

9   1.)  However, the Department revoked this policy when it split from the Department of Motor

10   Vehicles.  (*Id*., Ex. 12 at 1.)  In this policy's place, the Department issued Policy 4.1.011, which left

11   the decision of whether to grant 4800 time to the chief of each individual division within the

12   Department.  (*Id*., Exs. 19, 13 at 2.)

13        At the time of Plaintiff's grievance the Highway Patrol was the only division within the

14   Department that had established a policy granting 4800 time.  (*Id*., Ex. 13 at 2.)  The Division of

15   Parole and Probation had not adopted such a policy, and no one in the Division had been granted

16   4800 leave.  (*Id*.)   However, in its decision, the Employee-Management Committee noted that by

17   granting Plaintiff 4800 leave, the Division had set a precedent for the provision of 4800 leave.  (*Id*.,

18   Ex. 18 at 2.)

19        On February 15, 2006, at the instruction of the Department, Plaintiff underwent a

20   Functional Capacity Evaluation ("FCE").  (*Id*., Ex. 20.)  During the FCE, Plaintiff reported that her

21   knee was "locking," and following the FCE she complained of swelling and pain in her knee.  (*Id*.,

22   at 6.)  Based on this injury, Plaintiff applied for 4800 time.  (*Id*., Ex. 21.)  Defendant Steiber, a

23   lieutenant in the Parole and Probation Division informed Plaintiff that her request had been rejected

24   because Plaintiff's doctor did not prescribe a convalescence of at least thirty days.  (*Id*.)

25        On April 13, 2006, Plaintiff filed a second grievance seeking 4800 leave with Natalie

26

1  Wood, Plaintiff's immediate supervisor.  (*Id*., Ex. 24.)  In response, Ms. Wood informed Plaintiff

2  that she had no authority to grant the relief Plaintiff requested.  (*Id*., at 10.)  Instead, Ms. Wood

3  directed Plaintiff to submit her grievance to the Chief of the Division.  (*Id*.)  On May 4, 2006,

4  Plaintiff then submitted her grievance to Defendant Togliotti.  On May 18, 2006. Defendant

5  Togliotti rejected Plaintiff's grievance because her grievance was procedurally flawed, as Plaintiff

6  had failed first to submit a grievance to the Chief of her Division. (*Id*. at 12.)  Plaintiff continued to

7  pursue the matter, and the Department agreed to pay Plaintiff 4800 time for eight days between

8  March 12, 2006, and March 22, 2006, and for additional days in June and July of 2006.  On

9  September 19, 2006, Plaintiff received a partial permanent disability award in the sum of $27,343.

10  **II.    Legal Standard**

11         Summary judgment is appropriate only when "the pleadings, depositions, answers to

12  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

13  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

14  law."  Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

15  with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

16  to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

17  587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

18         The moving party bears the burden of informing the court of the basis for its motion, along

19  with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

20  477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

21  must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

22  find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

23  1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

24         To successfully rebut a motion for summary judgment, the non-moving party must point to

25  facts supported by the record that demonstrate a genuine issue of material fact.  *Reese v. Jefferson*

26

5

1    *Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the

2    outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

3    (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is

4    not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material

5    fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for

6    the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of

7    evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute;

8    there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at 252.

9    **III.   Discussion**

10         Pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants (1) violated Plaintiff's right to

11    equal protection of the laws under the Fourteenth Amendment to the United States Constitution, (2)

12    denied Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United

13    States Constitution, and (3) retaliated against Plaintiff for exercising her First Amendment rights.

14    In addition, Plaintiff alleges claims for breach of contract and breach of the implied covenant of

15    good faith and fair dealing.  The court will address each of these claims below.

16         **A.  Equal Protection**

17         "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

18    'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

19    direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne*

20    *Living Ctr.*, 473 U.S. 432, 439 (1985) (*citing Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "To

21    establish a § 1983 Equal Protection violation, a plaintiff must show that the defendant, acting under

22    color of state law, discriminated against her as a member of an identifiable class and that the

23    discrimination was intentional."  *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130,1134 (9th

24    Cir. 2003) (citations omitted).

25         In the complaint, Plaintiff alleges gender-based discrimination.  For equal protection

26

purposes, Plaintiff would be a member of a protected class because she alleges discrimination on

the basis of her gender.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 322 (1991)

("women are unquestionably a protected class").  However, in her opposition, Plaintiff states that

she is in a non-suspect class and that rational basis scrutiny applies.[2]  (Pl.'s Opp. (#29), at 6.)

Thus, rather than claiming gender-based discrimination, it now appears Plaintiff claims

Defendants discriminated against her as an employee of the Parole and Probation Division.

Plaintiff argues Defendants treated her differently than employees of the Highway Patrol, who were

granted 4800 time.  Plaintiff claims the Department of Public Safety had an obligation to provide

4800 leave to all of its similarly situated employees.  She contends the Parole and Probation

Division and the Highway Patrol are similarly situated in terms of workplace injuries and time off

and that there is no rational basis for making a distinction in providing for 4800 time based on the

division.

In initially denying Plaintiff's 4800 time, the Division of Parole and Probation acted

pursuant to section 281.153, which provides the Department with discretion in determining whether

to offer 4800 time.  Plaintiff admits that section 281.153 is valid on its face.  Indeed, "A state . . .

has no obligation to produce evidence to sustain the rationality of a statutory classification.  A

legislative choice is not subject to courtroom factfinding and may be based on rational speculation

unsupported by evidence or empirical data.  A statute is presumed constitutional, and the burden is

on the one attacking the legislative arrangement to negative every conceivable basis which might

support it . . . ."  *Heller v. Doe*, 509 U.S. 312, 319 (1993) (citation omitted).

---

[2] Despite this statement, Plaintiff continues to mention gender discrimination in her opposition. Regardless, even if Plaintiff's equal protection claim were gender based, the claim would not survive the motion for summary judgment.  Plaintiff has failed to cite any evidence indicating Defendants denied her the 4800 time she requested because of her gender.  Indeed, there is no evidence in the record indicating Defendants treated her request for 4800 time differently than any male's request for such time.  In fact, Plaintiff has failed to cite to any evidence in the record indicating Defendants have ever granted 4800 time to a male.  In the absence of any other evidence supporting gender discrimination, the fact that no other individual had applied for such time at the time of Plaintiff's request does not provide support for Plaintiff's allegations of gender discrimination.

To the extent Plaintiff argues Defendants have unconstitutionally applied section 281.153 by denying leave to members of the Parole and Probation Division, Defendants have demonstrated a rational basis for their actions.  First, Nevada Revised Statutes section 281.153 gives the employer of a police officer or a fire fighter discretion in determining whether to provide its employees with 4800 leave time.  In accordance with section 281.153, the Department enacted a policy stating, "Subject to budget considerations, Division Chiefs may establish a '4800 Time' program."  Defs.' Mot. Summ. J. (#24), Ex. 9.)  Because of such budgetary constraints, at the time Plaintiff requested 4800 time, the Parole and Probation Division had not established a 4800 time program.  (*Id.*, Ex. 13 at 2.)  Conversely, the Highway Patrol had enacted a 4800 time program. (*Id.*, Ex. 14.)  There is no evidence in the record indicating that the budgets of the Highway Patrol and the Parole and Probation Division are identical or otherwise indicating the Division of Parole and Probation's decision to deny 4800 time was due to anything other than budgetary constraints.

In addition, under the Nevada Revised Statues, Highway Patrol officers and Parole and Probation officers are not "similarly situated."  Instead, Nevada Revised Statutes section 289.460 classifies officers of the highway patrol as "Category I" peace officers, and section 289.470 identifies officers of the Parole and Probation Division as "Category II" peace officers.  Thus, the Department possessed a rational basis for distinguishing between the Highway Patrol officers and the Parole and Probation officers.

Defendants have demonstrated a rational basis for the Department's differential treatment of Highway Patrol officers and Parole and Probation officers.  Accordingly, the court finds, based on the evidence before it, no reasonable jury could conclude Defendants violated the equal protection rights of Plaintiff.  Summary judgment is therefore appropriate.

///

///

///

8

**B. Due Process**

In the complaint, Plaintiff alleges Defendants have "intentionally deprived Plaintiff of [a] property interest without due process." (First Am. Compl. (#6) ¶ 19.)  Plaintiff identifies the 4800 time and "light duty status" as the property interests to which she is entitled.

Even assuming the 4800 time and light duty status are state-created property interests, Defendants have demonstrated summary judgment is appropriate on the due process claim. Plaintiff bases her due process claim on Defendant's denial of 4800 time for the days in which she worked part time.  In her opposition, Plaintiff recognizes she was "able to pursue a grievance process resolved by a settlement." (Pl.'s Opp. (#29) at 10.)  However, Plaintiff contends the grievance procedure did not address her request for 4800 time for partial days.

Plaintiff's argument is unsupported by the evidence.  After Defendants granted Plaintiff's request for 4800 time for the full work days she missed, Plaintiff requested additional 4800 time for the days when she returned to work, but worked only four hours per day.  Defendants denied Plaintiff's request, reasoning Plaintiff did not suffer a  "temporary total disability" as required by Nevada Revised Statutes section 285.153 and as defined by section 616A.340.  Section 616.A340 defines a total disability as "incapacity arising out of and in the course of employment which prevents the covered workman from engaging . . . in any occupation for which he is or becomes reasonably fitted by education, training or experience."  Nev. Rev. Stat. § 6161A.340.  Because Plaintiff was able to return to work, Defendants concluded she did not qualify for 4800 time. Plaintiff appealed, and on March 7, 2006, the Employee-Management Committee affirmed the denial.

Plaintiff has failed to identify any part of the grievance process that was procedurally flawed.  Instead, Plaintiff was able to pursue her claim for 4800 time fully, and it was denied. Contrary to Plaintiff's assertions, the grievance procedure directly addressed the denial of 4800 time for the partial days worked.  Thus, it appears that Plaintiff's real claim is not that she was

1   denied procedural due process, but that the process she was given resulted in an unfavorable

2   outcome.  Such an argument does not support a procedural due process claim, and the court will

3   grant summary judgment as to this claim.[3]

4   **C.  First Amendment Retaliation**

5       Plaintiff alleges Defendants ultimately denied her request for 4800 time because she

6   challenged Defendants' initial decisions denying such time.  "It is well settled that 'a State cannot

7   condition public employment on a basis that infringes the employee's constitutionally protected

8   interest in freedom of expression.'"  *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006) (*quoting*

9   *Connick v. Meyers*, 461 U.S. 138, 142 (1983)).  Generally, "[t]o sustain a First Amendment

10  retaliation claim, a public employee must show (1) the employee engaged in constitutionally

11  protected speech, (2) the employer took adverse employment action against the employee, and (3)

12  the employee's speech was a 'substantial or motivating' factor in the adverse action."  *Posey v.*

13  *Lake Pend Oreille School District No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (*quoting Freitag v.*

14  *Ayers*, 468 F.3d 528, 543 (9th Cir. 2006)).

15      Noting that "First Amendment retaliation law has evolved dramatically, if somewhat

16  inconsistently," the Ninth Circuit recently clarified and explained the appropriate approach to

17  assessing a First Amendment retaliation claim.  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir.

18  2009).  In doing so, the court outlined the following sequential, five-step series of questions to be

19  answered in a First Amendment retaliation case: (1) whether the plaintiff spoke on a matter of

20

21          [3] In the complaint and in the opposition, Plaintiff does not appear to allege a substantive due
    process claim.  To the extent Plaintiff is attempting to assert a substantive due process claim, with
22  regard to her due process claim, Plaintiff has not identified a suspect classification or identified any
    action distinguishing among individuals that implicates a fundamental right.  Accordingly, Defendants
23  actions would violate due process only if the actions were not rationally related to a legitimate
    government purpose. *See Matsuda v. City & Council of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008)
24  (citations omitted).  The burden on the plaintiff is "extremely high," and she must show that the
    defendants deprived her rights in a way that "shocks the conscience" or "interferes with rights implicit
25  in the concept of ordered liberty."  *Id.*  Plaintiff has neither alleged nor identified any such conduct.
    Accordingly, any substantive due process claim likewise fails.
26

public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in an adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Id.* The court will address these questions below.

To determine if an employee's speech addresses a matter of public concern, courts look at the "content, form and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. "If employee expression relates to an issue of 'political, social, or other concern to the community,' it may fairly be said to be of public concern." *Brewster v. Lynwood Unified Sch. Dist.*, 149 F.3d 971, 978 (9th Cir. 1998) (*quoting Connick*, 461 U.S. at 146). "On the other hand, speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Determining whether the speech at issue touched on a matter of public concern is purely a question of law properly decided on summary judgment. *Posey*, 546 F.3d at 1126 (citations omitted).

Plaintiff contends her speech touched on a matter of public concern because it addressed a law enforcement agency's failure to enforce a section of the Nevada Revised Statutes. While such an allegation could, in theory, support a finding that speech addressed a matter of public concern, the statute at issue here, section 281.153, governs the internal employment actions of law enforcement agencies. It is not a statute that addresses public safety or internal government procedures that otherwise might have an affect on the public.

Moreover, Plaintiff has not identified any statute or policy Defendants have actually failed to enforce. Instead, the statute at issue, section 281.153, grants employers of law enforcement officers discretion in determining whether to provide 4800 time. In initially deciding not to provide

11

1  such time, Defendants acted in accordance with the statute.  To the extent Plaintiff allegations are

2  based on Defendants' refusal to provide her with 4800 time benefits for the days when she worked

3  part-time, Plaintiff has failed to identify any statute or policy requiring such part-time payments.

4           Finally, Plaintiff also contends her speech addressed a matter of public concern because it

5  involved allegations of discriminatory treatment in the application of the Department's 4800 time

6  policy.  While allegations of discriminatory treatment undoubtedly can qualify as speech addressing

7  a matter of public concern, the content of Plaintiff's statements is not of the kind typically

8  recognized as addressing a matter of public concern.  Notably, Plaintiff did not allege during the

9  grievance process that the discriminatory treatment was based on her gender or any other suspect

10  classification.  Instead, her grievance focused on the Departments' granting 4800 time to officers in

11  the Highway Patrol, indicating Plaintiff's statements involved an internal agency dispute over the

12  payment of benefits and not the type of racial or gender-based discrimination or other topic of

13  social concern courts have found to be in the public concern.

14          Thus, Plaintiff has failed to demonstrate that her speech addressed a matter of public

15  concern.  As speech addressing the failure to follow a statute and discrimination are the only bases

16  upon which Plaintiff asserts speech on a matter of public concern and as this is a necessary element

17  of Plaintiff's First Amendment retaliation claim, the court will grant summary judgment with

18  regard to this claim.

19  **IV.    Conclusion**

20          The court has found that summary judgment is appropriate with regard to each of Plaintiff's

21  constitutional claims for relief.  Because the court will dismiss all federal claims, the court will not

22  ///

23  ///

24  ///

25  ///

26
                                                     12

retain supplemental jurisdiction over Plaintiff's breach of contract claims.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#24) is hereby GRANTED.

The Court Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED this 24th day of March, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

13